## MRS. S. M. CASON *v.* JOHN D. CASON *et al.*

### *(Nashville.* December Term, 1905.)

1. **CONTRACTS AND DEEDS.** Grantee or beneficiary of deed of conveyance of land is not affected by the fraud or duress of a third person, when.

A party to a contract, as the grantee or beneficiary of a deed of conveyance of land, is not affected or prejudiced by the fraud or duress of a third person, not his agent, nor acting in collusion with him, in procuring the execution of the contract or deed, nor by the acceptance of such contract or deed and its benefits without knowledge of such fraud or duress, although such third person is the notary public who took the privy examination of a married woman as the maker of such deed. (*Post, pp.* 188-193, 195, 196.)

Code cited and construed: Secs. 3194, 3199, 3714 (S); secs. 2461, 2466, 2852 (M. & V.); secs. 1792, 1795 (T. & S. and 1858); sec. 2039b (T. & S.).

Cases cited and approved: Lee v. Vaughn, 1 Bibb (Ky.), 235; Copeland v. Curry, 1 Bibb (Ky.), 176-178; Appleton v. Horton, 25 Me., 23; Pulsford v. Richards, 17 Beav., 95; Duranty's Case, 26 Beav., 270; Worth's Case, 4 Drew, 529; Whitmore v. Mackinson, 16 Beav., 128; Ellis v. Coleman, 25 Beav., 673; Fulgate's Case, 2 De Gex, Jones & Smith; Nash v. Title Co., 28 L. R. A., 757, 47 Am. St. Rep. 489; Root v. Bancroft, 8 Gray, 619; White v. Graves, 107 Mass., 325; Martin v. Campbell, 120 Mass., 126; Compton v. Bank, 96 Ill., 301; Smedes v. Bank, 20 Johns. (N. Y.), 384; Bank v. Howell, 63 Am. Dec., 717.

Case cited and distinguished: Coffman v. Bank, 5 Lea, 232.

2. **PRIVY EXAMINATION.** Officer's failure to explain fully the transaction will not vitiate married woman's deed, when.

The failure of the officer, who takes the acknowledgement and privy examination of a married woman to her deed of convey-

Cason v. Cason.

ance of land, to explain fully the transaction. and the consequences of her act, in the absence of fraud practiced by the grantee or his agent, will not vitiate her deed or render it void. (*Post, pp.* 193-195.)

Cases cited and approved: Shields v. Netherland, 5 Lea, 196; Curry v. Kerr, 11 Lea, 142; Grotenkemper v. Carver, 9 Lea, 77; Edwards v. Boyd, 9 Lea, 204; Ronner v. Welcker, 99 Tenn., 626; Burem v. Winstead, 103 Tenn., 285, 288.

3. **DEEDS OF CONVEYANCE.** Mere acceptance by grantees does not ratify fraud or duress of notary public in procuring execution and acknowledgment and privy examination, when. The mere acceptance of a deed by the grantees or beneficiaries does not operate as an adoption or ratification of the fraud or duress of the notary .public in procuring the execution of the deed and the maker's acknowledgment and privy examination, where it is not shown that the grantees or beneficiaries had any knowledge of the fraud or duress.    (*Post, pp.* 196-198.)

4. **SAME.** Mental incapacity that renders deed void. A deed of conveyance of land executed and delivered at a time when the maker is mentally unbalanced, and has no intelligent comprehension of the act being performed, and is incapable of transacting any business understandingly, no matter what produced such mental incapacity,  is absolutely void. (*Post, pp.* 198, 199.)

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —H. H. Cook, Special Chancellor.

W. D. COVINGTON and W. S. LAWRENCE, for complainant.

CHAMBERS & AUST, for defendants.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

This bill was filed by the next friend of Mrs. S. M. Cason for the purpose of setting aside a conveyance made by her of a house and lot in the city of Nashville alleged to be her separate estate, upon two grounds: first, duress, and, second, incapacity to contract. Duncan & Waddy, real estate agents et al. were made parties defendant. Answers were filed denying all the material allegations of the bill. Proof was taken and on the hearing before Hon. H. H. Cook, presiding as special chancellor, a decree was pronounced dismissing the bill. Complainants appealed and on the hearing in the court of chancery appeals the decree of the chancellor was reversed and a decree pronounced in favor of Mrs. S. M. Cason for the sum of $1,800 and interest, against Duncan & Waddy. It appearing that the property had been transferred by them to an innocent purchaser for value before suit brought. Defendants Duncan & Waddy appealed and have assigned errors.

The main contention urged on behalf of appellants is that the facts found by the court of chancery appeals are not warranted by the allegations of the bill, but, on the contrary, are wholly at variance with the case made

in the pleadings. It will be necessary, therefore that the case made in the original bill should be fully stated in order to ascertain whether its allegations are sustained by the findings of fact reported by the court of chancery appeals:

The bill alleges "that the defendants Duncan & Waddy are, and have been for several years past, engaged in the real estate business in Nashville, Tennessee, and on or about December, 1890, they employed in the capacity of bookkeeper W. A. Cason, the son of complainant and defendant J. D. Cason; that on or about the last of December, 1896, it was charged by the members of the said firm of Duncan & Waddy that the said W. A. Cason was short in his accounts with their firm and threatened that unless the said alleged shortage was made good to prosecute said W. A. Cason to the full extent of the law. It was alleged by the memebers of the said firm that the books of W. A. Cason showed conclusively that W. A. Cason was short in his accounts. . . .

"On or about January 1, 1897, one W. W. Scovel, the agent of Duncan & Waddy, called upon complainant, S. M. Cason, and proposed to her that if she would transfer to Duncan & Waddy the property now in controversy, which was the home place of Mrs. Cason, and was held by her as her separate estate, the said firm would accept it in full settlement of all the alleged indebtedness of W. A. Cason to them, and would, in consideration of said transfer, agree not to prosecute said W. A. Cason, or give the matter any publicity whatever; that

the wedding of W. A. Cason, which had been announced, and for which the invitations had been issued, could then take place without any embarrassment from them by publishing the charges which they had made against the said W. A. Cason."

"Complainant would show to your honor that she at first positively refused to sign this conveyance as she was urged to do. It was then represented to her by the said Scovel that Mr. Duncan was opposed to this compromise, and had only been induced to agree to it that day, and if Mrs. Cason refused then she would probably have no further opportunity to agree to it, and, as a result of her refusal, her son would be arrested, disgraced, and prosecuted, and perhaps be sentenced to the state penitentiary.

"Complainant would further show to your honor that she was at this time and had been for about seven years prior thereto, an invalid and had during most of this long time, been confined to her bed and room, and being at this time much excited and mentally distressed by the threats against her son. Thus conditioned and surrounded, and also being urged and advised by her husband to sign the said deed as the best thing that could be done, complainant yielded and signed the deed when she was not, as above shown, in a condition, mentally and physically, to transact business. This deed had already been prepared and drawn up and placed in the hands of W. W. Scovel, who was a notary public, and

who took her acknowledgment to the deed, notwithstanding he was familiar with her mental and physical condition, and at the same time holding out the threats of said Duncan & Waddy, or Sanford B. Duncan, and also knew that her husband was urging her to sign the deed.   .   .   .

"Complainant further shows to your honor that despite the protest and assurances of Duncan & Waddy and their agent as aforesaid, that this conveyance would settle the entire indebtedness of their son, and that the matter would be hushed, the said firm of Duncan & Waddy, or one of the members thereunder, went before the grand jury of Davidson county, and had W. A. Cason indicted; whereupon the said Cason, with Sanford Duncan as prosecutor, was tried in the criminal court of Davidson county, but upon an indictment charging him with making a false entry upon the books of Duncan & Waddy, and not upon an indictment charging him with embezzlement, and was convicted; whereupon he was pardoned by the governor of the State, and a *nolle prosequi* was entered as to the remaining indictment.

"Complainant is therefore advised that the entire consideration for which this deed was made has failed and that the said Duncan & Waddy, both by reason of their bad faith in obtaining this deed and by the exercise of duress and undue influence in obtaining this deed from complainant, in addition to the fact that they have utterly failed to do as they agreed to do, are in equity bound to reconvey to her the property which they thus

obtained, or in the event that cannot be done, that they should pay to complainant the value thereof."

The answer of the defendants, Duncan & Waddy, expressly denied every ground of relief alleged in the bill. "They deny that they made the alleged threats to prosecute W. A. Cason in order to obtain said deed, denied that they practiced any fraud or deceit, or used any duress in order to obtain the deed, and denied that there was any failure of consideration. They also denied that they made any promise not to prosecute W. A. Cason, and not to give publicity to his conduct if the deed were executed, but they say that when the deed was made, they had discovered only $4,500 of his shortage, and still had him in their employ. They also denied that W. W. Scovel was their agent to procure the execution of the deed, and alleged that he was merely a notary public selected by complainant's son to take her acknowledgment to the deed, when they had selected J. H. Yarbrough to whom the son objected. . . . . . They allege that after the deed was executed they learned from a fresh investigation of the books by experts that W. A. Cason's embezzlements amounted to $16,000, and it was then they discharged him and prosecuted him. They admit W. A. Cason was convicted and sentenced to the penitentiary for five years on an indictment for a false entry and was pardoned by the governor."

"They also deny that complainant at first refused to sign the deed.

"They allege that W. A. Cason himself proposed to

have his mother and father convey the property for his benefit; that they agreed to take it at a valuation of $3,000, assuming an incumbrance of $800, and give him credit for the balance of $2,200, which was done; that he objected to having the deed made directly to them lest it reveal to the public his embezzlement, and that on account of this objection of her son, the deed was made to said Fisher, to be held by him until sold; that W. A. Cason himself wrote the deed, carried it to his mother and selected Mr. Scovel as the notary to take her acknowledgement; that all this occurred December 31, 1896, although W. A. Cason in writing the deed dated it January 1, 1897."

"They reiterate their denial that said Scovel acted as their agent in taking the acknowledgment and deny that they made or assented to any composition or compromise of W. A. Cason's defalcations at the time the deed was made, or at any time before October 1, 1898, when a settlement was made.

"They deny that they had any communication whatever with complainant concerning said conveyance, either directly or indirectly, by themselves or by an agent; and deny that they ever, at any time, in any way, directly or indirectly, made or offered to her any threat or inducement of any kind in order to obtain said deed."

"They allege that on October 1, 1898, (before the filing of the bill) W. A. Cason and his father executed notes to them for $4,500 in settlement of the balance of the former's defalcations.".

"They further allege that after the deed was made, to wit: on January 11, 1897, complainant wrote a letter to the defendant Duncan in which she pleaded for mercy for her son, and in which she made no claim of any composition."

This is a condensed statement of the pleadings and is sufficient to show the real issue presented. The court of chancery appeals reports the following finding of facts: On December 31, 1896, W. A. Cason prepared a deed to be executed by his mother, conveying the house and lot in controversy to the defendant J. G. Fisher. There was some discussion as to whom the deed should be made, young Cason not desiring to convey directly to Duncan & Waddy, lest the matter might obtain publicity. Finally, it was agreed the deed from Mrs. Cason should be made to J. G. Fisher, since Duncan & Waddy were indebted to him. Complainant and her husband signed and acknowledged the deed before W. W. Scovel, the notary public, as appears from the certificate on the deed. Fisher afterwards conveyed the property without notice to Naomi Shea. The suit, however, was dismissed as to her."

"We find," said that court, "that at the time Mrs. Cason signed this deed, she was an invalid and had been unable to walk for seven years. She had also been at bedside of her nine year old son, who had just recovered from a spell of scarlet fever. She was weak in body at the time. Her son, W. A. Cason, brought the deed to her to sign and left it without explaining its contents. Sco-

vel, under the direction of W. A. Cason, went to the home of complainant, to take her acknowledgment and privy examination, and found her reading the deed. She asked Scovel to be seated until she finished reading the instrument, remarking that her son had left without fully explaining it to her, but had asked her to sign the deed for him as it was to his interest that she should. She asked Scovel to explain it, stating that she did not have a chance to talk to her son Will (W. A.) about it. Scovel, the notary public, further says: 'I replied that I had simply come over at Will's request to take the acknowledgment, but would inform her that she was conveying the place to J. G. Fisher for a consideration of $3,000, $800 of which Fisher assumed to pay (in discharge of an existing incumbrance on the place), and that the remaining $2,200 was for Will's benefit. She said she was willing to sign it, for she told Will if at any time he wanted the place she would deed it to him. He had been very good to her and she was perfectly willing to do anything he asked her to do. I explained to her that I as a notary public was required to take her acknowledgment as having been done by her freely, voluntarily, and understandingly, and that I could not take it any other way; she said she was ready to acknowledge it that way. She signed the instrument, and I took her privy acknowledgment thereto.' "

"Scovel says he then talked with Mrs. Cason for five minutes pleasantly on general topics, when her husband came in. He, Scovel, then retired to let them talk to-

gether.   Mr. Cason followed him to the door and asked
him if she signed the deed would that settle the trouble.
Scovel replied that he could make no promises whatever;
'that he (Cason) was in no position to buck against
Duncan & Waddy, that Will had put them in a very
bad fix and it was nothing more than right for them to
do all in their power to remunerate Duncan & Waddy."
Scovel further says:   'I told him that I had heard Wad-
dy say that if Will did all in his power to pay back, he
was not disposed to prosecute, but I had heard nothing
from Duncan in reference to it and couldn't say what
he would do.'   Scovel, the notary, further says: "I walk-
ed up Woodland street and returned in about fifteen
minutes and found Mrs. Cason overcome with grief,
sobbing and crying and saying that she was sorry that
Mr. Cason ever told her; that she would rather she had
given up everything she had in the world than ever to
have known it.   She sobbed that when Sam (her second
son) got in his trouble, she thought it would break her
heart, but now Will, the one she had trusted and de-
pended upon, that he should have done this way was
more than she could stand; oh, that she could die.' Sco-
vel further states that after leaving the room on his way
out, Mr. Cason said that he had not told his wife all,
'only that Will had overdrawn.'   It will be observed that,
according to the testimony of Scovel, Mrs. Cason when
she signed and acknowledged the deed with privy ex-
amination, was not apprised of the fact that her son
was a defaulter to the firm of Duncan & Waddy, but

before the deed was finally delivered to Scovel, Mrs. Cason had been informed by her husband that her son had overdrawn his accounts, but had not told her all."

The court of chancery appeals makes this finding of fact touching the alleged duress under which Mrs. Cason acted when she executed this deed: "We take into account her condition and all the circumstances and find that she was under such duress that she was incompetent to assert her rights, and her free agency was practically destroyed. She was certainly under mental constraint, and, in consequence, did what she would not have otherwise done. Beyond all question, the complainant, Mrs. Cason, was in no condition of mind at the time of signing this deed, to act freely and intelligently. It matters not whether Scovel was acting as the agent of Duncan & Waddy or not, for if the deed was procured by fraud or the misrepresentations of Scovel, which amounted to duress, and Duncan & Waddy accepted the deed, they will in law adopt his acts." Citing from *Coffman* v. *Lookout Bank,* 5 Lea, 232.

The court of chancery appeals continues: "Proper time was not allowed Mrs. Cason. She was overwhelmed by the information given her as to the conduct of her son, that he was guilty of making false entries, misappropriating the funds of his employers, and squandering it for his personal uses, and upon the spur of the moment, in the hope of saving her son and the honor of the family, executed this deed. Undue influence was brought to bear upon her mind by a detail of the facts

Cason v. Cason.

as to her son, and she did not and could not exercise her free agency. That she was under mental duress, we have no doubt; she was troubled and reason was almost dethroned, and she acted under this excitement and distress. If Scovel states correctly her condition, she was certainly incapable of transacting any business intelligently and understandingly. The proof further shows, and we so find, that this property in controversy belonged to complainant. The title was in her name and it was paid for with money that she received from her deceased father's estate."

The court of chancery appeals further stated: "We fail to see what good Mrs. Cason could hope to accomplish by the conveyance unless she could shield her son. It is unreasonable to suppose that a sane woman, capable of contracting and understanding what she was doing, would part from all her property, and make her penniless when she knew this would not settle her son's defalcation, and that he would be prosecuted and punished. She wanted to protect him and his then prospective wife, and the good name of her family, etc. It stands to reason that she thought all would be settled and if she lost her home, she would save her son and honor." On the subject of laches, that court finds as follows: "It is true, as stated by defendants, that neither the complainant, her husband, nor her son, ever approached Duncan & Waddy, or Fisher, or Miss Shea, about this matter prior to the filing of this bill."

The deed was made January 1, 1897, and the bill here-

in was filed May 10, 1899, or two years and four months after the execution of the conveyance. It is proper to state that in a supplemental opinion, the court of chancery appeals finds Scovel was not the agent of Duncan & Waddy, but was merely a notary public selected by W. A. Cason to take his mother's acknowledgement to the deed, and that he represented W. A. Cason and also Duncan & Waddy in the matter of taking the privy examination of complainant and her acknowledgment, and that of her husband, to this deed, and did so by their consent and under their suggestion."

That court also states that "Mr. Scovel had office room with Duncan & Waddy, and the record shows that he was endeavoring to serve their interests in this matter. Taking their statements as true, he was not their agent," as the court finally holds.

We have thus made very extended quotations from the findings of the court of chancery appeals, in order that we may more intelligently consider defendants' assignments of error, which are as follows:

1. Because the opinion finds that Mrs. Cason signed and acknowledged the deed before she learned the facts which are found to have constituted duress, and although deprived of mental capacity to understand the transaction.

2. Because it is found as a fact that W. W. Scovel who is found to have made the statements to Mrs. Cason which are made the basis of the finding of duress was not the agent of Duncan & Waddy, and because there

is no finding that Duncan & Waddy, or either of them, said or did anything tending to constitute duress; and because there is no finding that they had any knowledge of anything said or done by the said Scovel, or any other person, tending to constitute duress.

3. Because it is found that everything which was said or done tending to constitute fraud or deceit in connection with the execution of the deed was said and done by said Scovel, and that he was not the agent of Duncan & Waddy, and because there is no finding that Duncan & Waddy, or either of them, said or did anything tending to constitute fraud or deceit, and no finding that they or either of them had any knowledge of anything said or done by said Scovel, or any person, tending to constitute fraud or deceit.

4. Because the facts show that the deed was made for consideration of $2,200 going to W. A. Cason, of which he received the benefit, as complainant understood he would when she signed and acknowledged the deed.

5. Because complainant, with full knowledge of all the facts, remained silent and inactive for more than two years and four months after executing the deed before complaining of any fraud or duress therein, thereby ratifying the execution thereof, there being no explanation of her silence and inaction in either the bill or the findings of fact by the court of chancery appeals;. and the bill alleges that the property was her separate estate, and because she ratified the same by her reference there-

to, and failure to complain thereof in her letter to defendant Duncan.

6. Because complainant is barred by her laches and in delay in attacking the deed.

An attentive examination of the opinion of the court of chancery appeals will disclose that the fundamental fact upon which the invalidity of the deed from Mrs. Cason to J. G. Fisher was determined was that it had been procured through the fraud and duress of Scovel, the notary public. The cardinal inquiry then, as a matter of law, is whether Scovel, the notary public, was the agent of Duncan & Waddy in such a sense as that they are bound by his acts and representations beyond the mere official character in which he performed the notarial act. As already stated, the court of chancery appeals found that Scovel, the notary public, under the direction of W. A. Cason, the defaulting son, went to the home of Mrs. Cason to take her acknowledgment and privy examination to the deed in question, which had already been prepared by W. A. Cason, conveying the house and lot in controversy by his mother to the defendant, J. G. Fisher.

The deed had already been left with Mrs. Cason by her son, W. A. Cason. It is true that court, in a supplemental finding, states that Scoval also took the acknowledgment by the consent of Duncan & Waddy and under their direction—the result of the finding being that the notary took the acknowledgment under the direction of both parties, but the court of chancery ap-

peals expressly finds that the notary public, in making statements or propositions to Mrs. Cason, was not the agent of Duncan & Waddy, although he was endeavoring to serve their interests in this matter.

In Page on Contracts, vol. 1, section 129, it is said: "To constitute fraud, the false representations must be made by the party held liable therefor or his agent. A false statement made by a third person cannot be treated as the fraud of a party to the contract who is ultimately benefited thereby, if he did not know that such false statement had been made and was relied on by the adversary party, if the party who made the false representation is not the agent of such party to the contract. The party innocent of the fraud is not liable for damages, nor can the contract be rescinded unless it is void under the doctrine of mistake."

In the same volume, section 258, it is said: "Where a contract is induced by duress, the question of the relation to the party guilty of duress to the contract thus induced is often decisive of the rights of the party subjected to such duress. (1) If the adversary party to the contract is guilty of such duress, the party subjected thereto may of course avoid the contract induced thereby. (2) If the party guilty of duress is the agent of the adversary party to the contract, the party subjected to duress may avoid such contract even if the agent had no authority to commit such duress. This rule rests on the principle that if the principal accepts the benefits of the contract made by the agent on his behalf, he takes

it subject to all defenses. (3) If the person guilty of duress acts in collusion to the adversary party to the contract, the party subjected to duress may avoid such contract. (4) If the person who is guilty of duress, his act, on behalf of the adversary party, may be interposed as a defense against such adversary. (5) If the person guilty of duress is not the adversary party or his agent, and is acting neither in collusion with such adversary party nor on behalf of him, but is acting entirely for his own benefit, a different question arises as to the right of the party subjected to such duress to avoid the contract as against the adversary party who took no part in such duress. (a) If the facts constituting duress, and inducing the contract, are known to the adversary party to the contract, the party subjected thereto may avoid the contract; (b) if the facts constituting duress and inducing the contract are not known to the adversary party, the weight of authority is that the party subject to the duress cannot void such contract."

As already stated, the court of chancery appeals in its original opinion expressly finds that neither member of the firm of Duncan & Waddy had any communication whatever with Mrs. Cason in regard to the deed, and that said firm did not employ Scovel to take the acknowledgement to the deed, although they knew that Scovel was going to take it. Now, with this finding of the court of chancery appeals, that Scovel was not the agent of Duncan & Waddy in taking the acknowledgment to the deed, and that Duncan & Waddy had

no communication whatever with Mrs. Cason in regard to the deed, that court nevertheless finds it matters not whether Scovel was acting as the agent of Duncan & Waddy or not, yet if the deed was procured by fraud on the misrepresentations of Scovel which amounted to duress, Duncan & Waddy by accepting the deed, as a matter of law adopted the acts of Scovel. On this subject, Mr. Kerr in his work on Fraud and Mistake (Bump. Ed.), 339 says: "If a person by whose fraudulent misrepresentation a transaction has been adduced is not himself a party to the transaction, the transaction stands good, and cannot be repudiated if the other party to the transaction has not been party or privy to the fraud. The party defrauded must seek redress in an action on the case at law for damages against the party of whose fraud he complains." Citing *Lee* v. *Vaughn,* 1 Bibb (Ky.), 235; *Copeland* v. *Curry,* 1 Bibb (Ky.), 176-178; *Appleton* v. *Horton,* 25 Me., 23.

In *Pulsford* v. *Richards,* 17 Beavan, 95, Sir John Romilly, Master of the Roles, said: "In a case where the false representation is made by one who is no party to the agreement entered into on the faith of it, the contract cannot be avoided and all that equity can then do is to compel the person who made the representation to make good his assertion, as far as this may be possible."

See also *Duranty's Case,* 26 Beavan, 270; *Worth's Case,* 4 Drew, 529; *Whitmore* v. *Mackison,* 16 Beavan, 128; *Ellis* v. *Coleman,* 25 Beavan, 673; *Fulgate's Case,* 2 De Gex, Jones & Smith.

Cason v. Cason.

In *Nash* v. *Minnesota Title Co.* (Mass.), 40 N. E., 1039, 28 L. R. A., 757, 47 Am. St. Rep., 489, it is said: "It is clear that mere fraud of a third party which induces the purchase of goods will not give the purchaser a right to rescind the contract. If the seller is not a party to the fraud, the contract must stand." *Root* v. *Bancroft,* 8 Gray, 619; *White* v. *Graves,* 107 Mass., 325, 9 Am. Rep., 38; *Martin* v. *Campbell,* 120 Mass., 126.

In the case of *Compton* v. *Bunker Hill Bank,* 96 Ill., 301 (same case, 36 Am. Rep., 147), the facts were as follows: "George Compton, the husband of appellant, Mrs. Compton, was cashier of the Bunker Hill Bank. He embezzled the funds of the bank to the extent of $6,000. His wife, the appellant, was asked to sign and acknowledge a deed to the bank for certain real estate in satisfaction, or part satisfaction, of the funds so taken by her husband. She received no consideration for the deed. Her brother told her she must do it, as the all the bank people were angry and that to appease them and save her husband from the penalty of the law, the deed must be executed. Her husband also told her if she would sign the deed the bank had agreed not to prosecute him and would not do so if the deed was executed, and had put such an agreement upon the minutes of the bank. The deed was executed, and she brought suit to set it aside upon the ground it was executed by reason of fraud, duress, and imposition. She claimed she signed under great nervous excitement, and could not distinctly recollect all that was said or done. Upon these

Cason v. Cason.

facts, the court held as follows: "Other evidence clearly shows that neither the directors of the bank, nor any one else representing the bank, were present when the deed was signed, or had any conversation with appellant in regard to signing it. The deed was produced by appellant's husband, signed and acknowledged by himself and her, and by him delivered to the bank. And it is also shown that no one representing the bank had any knowledge of the representations that were made to appellant to induce her to execute the deed. . . . Even then if appellant was induced by false representations of her husband and brother to execute the deed, since those representations were neither induced by nor made with the knowledge of those representing the bank, the bank cannot be affected by them. The guilt of appellant's husband is clear and is not controverted, and therefore any threats which may be implied from the resolution of the board of directors to prosecute him for the offense of which he was guilty, does not constitute duress." The case of *Coffman* v. *Bank,* 5 Lea, 232, presents no analogy in its facts to the question here presented.

These authorities we think are conclusive of this question, but it is said by the court of chancery appeals that the alleged privy examination of Mrs. Cason was merely formal and that she was not fully apprised of all the facts. "The intention of the statute," continues that court, "is that the official taking the privy examination of a married woman is not simply to inquire whether

she signed the deed freely and voluntarily, but he must explain to her fully the consequence of her act or ascertain from her statement that she is fully advised." Citing *Curry* v. *Kerr*, 11 Lea, 142.

It was held by this court in *Shields* v. *Netherland*, 5 Lea, 196, that the failure of the officer taking a privy examination to explain the transaction as fully as he should, does not vitiate the deed, and that the conveyee may rely upon his certificate. In the midst of its opinion the court said: "The reason is that the taking of the probate of an instrument under the authority of law is in the nature of a judicial act and an essential part of the conveyance and cannot be contradicted by parol proof. The policy of the law requires that the official certificate should be conclusive. If it were otherwise, and the certificate only prima facie evidence of the facts intended to be verified, the title to land would lose in a great measure that security which the registration laws were designed to insure. The probate can only be attacked for fraud."

In *Burem* v. *Winstead*, 103 Tenn., 285, 52 S. W., 1070, it was held that the certificate in proper form of a married woman's privy examination to a deed cannot be avoided by extrinsic proof that her examination was not as full and technical as the statute requires. Such certificate cannot be attacked for mere irregularities but only for fraud or duress imputable to the conveyee." Citing *Shields* v. *Netherland*, supra; *Ronner* v. *Welcker*, 99 Tenn., 626, 42 S. W., 439. In the last case cited, it

was said: "If the certificate is in proper form and sign-ed by proper officials, it can only be attacked for fraud or surprise (duress — *Burem* v. *Winstead,* 103 Tenn., 288, 52 S. W., 1070), not for mere irregularities in tak-ing the privy examination, *and the fraud must be that of the conveyce or his agent."*

It is said, however, on behalf of appellee that the deed executed by Mrs. Cason to J. G. Fisher for the use and benefit of Duncan & Waddy, was made to secure a pre-existing debt due from her son, W. A. Cason, to the firm of Duncan & Waddy, growing out of his embezzle-ment. It is said Mrs. Cason was in no way liable for this debt, nor was her property in any way bound for its payment; hence there was no valuable consideration for the deed executed by Mrs. Cason to Fisher. Counsel cite *Edwards and wife* v. *William Boyd,* 9 Lea, 204, to the point that where the husband procures his wife's con-veyance to homestead or to her lands to secure a pre-ex-isting debt of his, he will be regarded as the agent of the creditor, who will be bound by the husband's action, distinguishing the latter case from the case of *Shields* v. *Netherland,* supra, where the conveyance was made for a valuable consideration then advanced on the faith of it. See also *Grotenkemper* v. *Carver,* 9 Lea, 77.

But the principle underlying complainant's argument is that Duncan & Waddy are responsible for the fraud-ulent conduct, duress, and misrepresentations made by Scovel, the notary public. As already stated, the court of chancery appeals expressly finds that Scovel was not the

agent of Duncan & Waddy in any statements or repre-
sentations made by him outside of his official character,
but independent of this finding, Scovel, in the capacity of
a notary public was acting as a public officer and as a mat-
ter of law could not have been the agent of either party.
The acknowledgment could not have been taken by eith-
er Duncan or Waddy, nor could it have been taken by any
agent representing them, but the law required that the
acknowledgement and privy examination should be tak-
en by a public official representing the State, and wholly
disinterested.   Shannon's Code, sections 3194, 3199,
3714; Mechem on Public Officers, section 47; *Smedes*
v. *Bank,* 20 Johns. (N. Y.), 384; *Bank* v. *Howell,* 63 Am.
Dec., 717.   Nor do we agree with the court of chancery
appeals in its holding that by the acceptance of the deed,
Duncan & Waddy adopted the fraudulent conduct and
misrepresentation made by the notary public.   The court
of chancery appeals does not find that Duncan & Waddy
had any knowledge of any fraud or duress practiced by
Scovel, the notary public, in procuring the execution of
the deed, and there being nothing to show that it was
authorized in the first instance, or afterwards, ratified
by Duncan & Waddy, they are not responsible for said
acts.

In Page on Contracts, vol. 1, section 130, it is said:
"But if the party making the fraudulent representations
is the agent of the party benefited thereby, or the agent
of both parties, or if a party ratifies the contract induc-
ed by such fraudulent representations of one acting as

his agent without authority, or knowingly aids in the commission of a fraud, etc., etc., he is liable as though he had made the representation in person."

The facts found by the court of chancery appeals do not bring the case within the rule announced above.

Attention is directed to a finding of the court of chancery appeals antagonistic to the theory of the bill. It will be remembered that theory of the bill was that the complainant, Mrs. Cason, had signed and acknowledged the deed under the duress of the threats made to prosecute her son and under a promise not to prosecute, but the finding of the court of chancery appeals is as follows: "We have given the statement of the notary public and from it and the other proof we find that when she signed and acknowledged this deed, she was in perfect ignorance of the conduct of her son in the management of the business of Duncan & Waddy, and that he was guilty of making wrong entries in their books and appropriating their moneys. The only information she had about the matter was given to her by the notary public to the effect that she was conveying the place to J. G. Fisher for a consideration of $3,000, $800 of which Fisher assumed to pay and the remainder, $2,200, was for Willie's (W. A. Cason's) benefit. Under this statement alone, she signed and acknowledged the deed, saying that her son had been good to her and that she had told him that if at any time he wanted the place, she would deed it to him. Mrs. Cason, as we have intimated, was kept completely in the dark as to the real purpose and reasons for

the execution of this deed, as we find from the testimony of Scovel, and did so under the belief that it was for the benefit of her son in some pecuniary way and because he was good to her and she trusted him just as Duncan & Waddy had." Now, in the light of this finding, it is difficult to see how the mind of Mrs. Cason could have been affected by the threats alleged to prosecute her son and promises of exemption from prosecution if she executed the deed when, according to the finding of the court of chancery appeals, she was perfectly in the dark and had no knowledge of her son's shortage and defalcation at the time the deed was executed. But, in this connection, the court of chancery appeals also finds that before the deed was finally delivered to Scovel, Mrs. Cason had been informed by her husband that her son had overdrawn his accounts.

It is insisted on behalf of appellee that the determinative finding of fact by the court of chancery appeals is that at the time Mrs. Cason delivered the deed, she did not and could not have any intelligent comprehension of what she was doing; that she was under mental constraint, her reason was almost dethroned, and finally that she was under duress.

Under the authorities already cited, Duncan & Waddy would not be responsible for duress brought about by the fraudulent conduct and misrepresentations of Scovel, the notary public, but if at the time the deed was delivered, Mrs. Cason was mentally incapable of performing the act, then she is not bound by the deed, no matter

Cason v. Cason.

what produced her mental incapacity. In this view of the case, it is wholly immaterial whether Scovel, the notary public, was the agent of Duncan & Waddy, or not. If his fraudulent acts and the revelations touching the charges of embezzlement against W. A. Cason mentally unbalanced Mrs. Cason, so that she had no intelligent comprehension of the act she was performing and was incapable of transacting any business understandingly, then the deed as to her is absolutely void. This finding of the court of chancery appeals, which is several times repeated, is absolutely conclusive of the case and must result in an affirmance of the decree of that court. It should be stated that appellants insist that complainant was guilty of such laches in bringing this suit to cancel the deed that she must be repelled from any relief.

In Page on Contracts, vol. 1, sec. 140, it is said : "Delay for an unreasonable time after the discovery of the fraud may, without positive acts of ratification, amount to a waiver of the right to rescind. Thus in equity delay for such lengths of time as eight years or three years may waive the right to rescind." However, under the peculiar facts of this case, we are of opinion that the doctrine of laches is not applicable. It appears that after Mrs. Cason executed this conveyance, Duncan & Waddy still continued to investigate the books of W. A. Cason and from time to time additional frauds and peculations were discovered so that finally the total amount of his embezzlement aggregated $16,000. An indictment was

soon found against W. A. Cason, charging him with making a false entry upon the books of Duncan & Waddy, and upon this charge he was convicted and sentenced to the penitentiary for a term of five years, but was pardoned by the governor.

It further appears that on October 1, 1898, twenty-one months after the deed was executed by Mrs. Cason to Fisher, W. A. Cason and his father executed notes to Duncan & Waddy for the sum of $4,500 in settlement of the balance of the former's defalcation. Now, it thus appears that this matter was not finally terminated until nearly two years after the conveyance from Mrs. Cason to Fisher, and it is not surprising that Mrs. Cason did not wish to further complicate matters by embarking upon a litigation with the firm of Duncan & Waddy, but it does appear that within a reasonable time after her son's matters had been settled up, she filed the present bill to invalidate the conveyance. The decree of the court of chancery appeals will be affirmed.